EBNER GOLD MINING CO. v. ALASKA-JUNEAU GOLD MINING CO.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1914.)

No. 2155.

1. APPEAL AND ERROR (§ 1010*)—REVIEW—FINDINGS OF FACT.
    Findings made by a trial court that no discovery had been made on a lode mining claim, and that the required assessment work had not been done thereon, will not be reversed by an appellate court, where the evidence was conflicting and there was substantial testimony to support such findings.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

2. MINES AND MINERALS (§ 23*)—MINING CLAIMS—ASSESSMENT WORK.
    Where the locator of a mining claim in Alaska has failed to do the annual assessment work required by Act March 2, 1907, c. 2559, 34 Stat. 1243 (U. S. Comp. St. Supp. 1911, p. 609), he cannot save his rights by a resumption of work before the intervention of other parties.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 51–59, 114; Dec. Dig. § 23.*]

3. PLEADING (§ 236*)—AMENDMENT—DISCRETION OF COURT.
    Under Code Civ. Proc. Alaska, § 92, it is within the discretion of a trial court to permit the amendment of an answer after the testimony has been concluded by setting up additional defenses to meet the evidence.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 601, 605; Dec. Dig. § 236.*]

4. COSTS (§ 32*)—ACTION TO RECOVER REAL PROPERTY—ALASKA STATUTE.
    Under Comp. Laws Alaska 1913, § 1342, which allows a plaintiff costs as of course on a judgment in his favor in an action to recover possession

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of real property, he is entitled to costs although he does not recover all
the land sued for.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig.
§ 32.*]

In Error to the District Court of the United States for the District
of Alaska; Edward E. Cushman, Judge.

Action at law by the Ebner Gold Mining Company against the
Alaska-Juneau Gold Mining Company. From a judgment in part in
its favor and in part against it, plaintiff brings error. Modified.

The Ebner Gold Mining Company, plaintiff below and plaintiff in error here,
brought an action in ejectment in the District Court, Division No. 1, of the
District of Alaska, against the Alaska-Juneau Gold Mining Company, defend-
ant in error, charging that some time in August, 1910, the Alaska-Juneau
Company wrongfully entered upon part of the Lotta and Parish No. 2 lode
claims which were owned and possessed by the Ebner Gold Mining Company,
and ejected the said Ebner Company therefrom and built a dam and flume
over the said claims.

The Alaska-Juneau Company denied all the material allegations set forth
in the complaint and claimed that it owned and was entitled to possess what
is conceded to be practically the same ground as had been described as Parish
No. 2 and Lotta claims by virtue of certain mining locations known as the
Oregon and the Canyon mining claims, respectively; that the dam referred
to in the complaint is within the boundaries of the Oregon and Canyon mining
claims; and that the flume is within the boundaries of the said two claims
and another claim owned by the defendant in error.

Defendant further set up that, if the Ebner Gold Mining Company ever had
had any interest in the claims described, it had failed to do the necessary
work and labor for the use and benefit of the Parish No. 2; that it owned
many mining claims and was building tramways and utilizing water which it
had appropriated for mining and other purposes; that the waters it had ap-
propriated were necessary in the operation of its mills; and that the dams
constructed by it were necessary; that the pretended Parish No. 2, the Ore-
gon, and the Canyon claims were all unpatented mining claims; that for
many years the miners of the Harris Mining District, Alaska, in which the
properties in litigation are situated, were accustomed to certain rights by
which riparian owners had no rights to the water flowing within the stream,
but could only enjoy the use of water by diversion, appropriation, and appli-
cation to beneficial usage.

Replication to the answer was filed, plaintiff denying the assertions of
claims of ownership made in the answer. Trial before the court without a
jury resulted in findings to the effect that the Ebner Company, plaintiff, owned
and possessed the Lotta claim; but that it had never owner or possessed the
ground claimed as Parish No. 2 claim; that the said Parish No. 2 "was lo-
cated solely for purposes of convenience; that no discovery of mineral-bear-
ing rock in place, of any value, was ever made by the plaintiff or its grantors,
nor any indication or evidence of such as could or would warrant or justify
one in spending time, work, or money in its development or in the expecta-
tion of finding ore; * * * that no assessment work required by law to
the extent of $100 each year has been performed or caused to be performed in
labor and improvements of any kind or for the benefit and use of said Parish
No. 2 claim prior to the year 1909; and that the plaintiff and its grantors
failed and neglected to sufficiently represent said claim during the years prior
to 1909, after its attempted location in 1899; * * * that the Oregon min-
ing claim was located solely for purposes of convenience; and that no dis-
covery of any mineral-bearing rock in place of any value was ever made by
defendant or its grantors."

As conclusions of law the court found that the plaintiff was entitled to the
possession of the Lotta claim and to a decree ousting the defendant there-

from; that the location known as the Parish No. 2 and the locations known as the Oregon and the Canyon mining claims were void and of no effect; and that neither of the parties was entitled to recover costs. Judgment was entered that plaintiff take nothing further by its complaint, and except as to the Lotta mining claim the action was dismissed. From this judgment the writ of error is prosecuted.

John R. Winn and N. L. Burton, both of Juneau, Alaska, for plaintiff in error.

Curtis H. Lindley, of San Francisco, Cal., and Hellenthal & Hellenthal, of Juneau, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above).    [1] The decision of the case turns upon the validity of the location of the Parish No. 2 and the Oregon lode claims.    Involved in this question is the necessity for determining whether or not there was any substantial evidence introduced upon which the court was justified in predicating its view of lack of discovery on the Parish No. 2.    The contention of the Ebner Company is that the record discloses that upon the trial, "by a great preponderance of the evidence, if not by the undisputed proof, plaintiff in error or its grantors had, prior to any intervening rights, made a good and sufficient discovery, location, staking, and marking of the boundaries and posting and recording of the location notice of the Parish No. 2 lode claim," and that since discovery the necessary annual assessment work had been done upon said claim.

Examination of the testimony of the witness Ebner, who was the original locator of the Parish No. 2 claim, discloses these questions and answers:

"Q. How did you happen to locate the Parish Lode?    That is, did you take a man with you the day you located it?    A. Do you want to know the history of it?

"Q. I will ask you now—the Parish No. 2 lode, was anybody with you the day you made that discovery?    A. When I made my discovery I think I had two men with me.

. "Q. How did you happen to take these two men with you?    A. In the first place, I always take a man with me when I go out in rough places; I had them for cutting brush.    The brush was very high and a great deal of it. *  *  *

"Q. Parish let the lodes lapse?    A. Yes, sir.

"Q. So you went out there some time—was it August, 1899?    A. It was during the latter part of the summer.    I prospected around some time before we started to locate them.

"Q. And your location notice described your discovery point?    A. Yes, sir; within a few feet or a short distance.

"Q. I wish you would describe to the court the appearance of that discovery.    A. Why the discovery on the Parish No. 2, Mr. Shackleford, is just north of a pit, an old pit that was there.

"Q. The Borean pit?    A. The Borean pit and the bedrock stuck out in one place there and showed quartz; that was the discovery for the Parish No. 2.

"Q. Is that bedrock there now?    A. I think that that is blasted out.    I think that is where the open cut was made.

"Q. Is it blasted out?    A. Yes, sir."

This testimony very clearly fixes the discovery point on the Parish No. 2 as in the Borean pit.    Counsel say, however, that there were so

many other discoveries made by Ebner, "which are practically un-
denied by the defendant in error and are to a great extent corroborated
by the witnesses of the opposing party, that we do not care to take the
time to dwell any further on the question as to whether the discovery
made at or near the Borean pit is or is not rock in place." But when
we turn to the testimony introduced by the defendant in error, we find
that its agent and general superintendent was asked particularly with
reference to the portion of the Parish No. 2 lying between the banks
of Gold creek and the southerly end line of the claim, and whether
there was any rock in place anywhere near the surface. We quote
from the record:

"A. The southerly end line?

"Q. Yes, I mean along where the Borean pit is: A. That is entirely cov-
ered by rock slide in the southeastern portion, all the way; it is made up of
two slides, one in the vicinity of Miller's gulch and the other coming from a
point on the north side of Snowslide gulch.

"Q. How about the Borean pit? Any rock in place anywhere in that vi-
cinity? A. In the Borean pit itself?

"Q. Yes. A. No, there is not.

"Q. Do you know where that open cut is—the Borean pit? A. I do.

"Q. Is there any rock in place in the neighborhood of that open cut? A. I
didn't see any.

"Q. Did you examine it? A. I did.

"Q. Answer the question whether there is or not. A. I don't think there is
any bedrock within at least 30 or 40 feet, if not more, of the bottom of the
Borean pit itself."

Counsel who represented the plaintiff in error in the court below
moved to strike out the last part of the witness' answer, but the court
denied the motion. The examination continued:

"Q. I now hand you this photograph marked '10,' and call your attention to
a rock shown on the right-hand side of the picture, and ask you if you are
familiar with that piece of rock there? A. I am. I looked at that very care-
fully.

"Q. Is that a boulder or rock in place? A. That is a piece of slide from the
cliff above and is part of the general slide.

"Q. Part of the general slide? A. Yes, part of the general slide.

"Q. Is that in place or not? A. It is not in place.

"Q. Is there, Mr. Kinzie, any rock in place in the Borean pit, at the Borean
pit or within a radius of 50 or 100 feet on each side of the pit? A. No, there
is not. You mean to be seen?

"Q. Yes. A. No, there is not.

"Q. How deep, in your opinion, is the slide rock there? A. The slide rock,
starting at a point—starting at Miller's gulch and following along Gold creek
until you come to a point almost in front of the two Alaska-Juneau tunnels,
and then going straight south to the side line of the Colorado or very likely a
little southeast from that point—the country above is entirely covered by slide
rock.

"Q. To what depth? A. It is varying from a few feet, practically nothing at
that point, to, I should judge, 50 or 80 feet."

Afterwards, in explanation of his opinion as to the depth of the
slide on Parish No. 2 lode claim at its southeasterly end, the witness
said that he had known of the slide in a general way for a long time,
that he had examined it just before the trial of the case, and that he
found two slides on the claim up the hill to the southeasterly end line
of the Parish No. 2. Another witness called by the plaintiff below tes-

tified that the rock in the Borean pit and within 75 feet of the open cut in the Borean pit was slide rock and not in place, that the slide was between 30 and 40 feet deep from the bottom of the open cut to the rim; that he dug an open cut toward the southerly side of the boulder toward a cut that he had made; that he then sunk a shaft about 3 feet wide and 4 feet long; that everything above the boulder was a solid mass of rock and everything beneath it loose gravel and boulders of granite differing in character from the boulder itself; and that, when he reached the open cut underneath, the entire mass gave evidence of breaking away and had to be timbered. Another witness, who was a surveyor, said that the open diggings in the Borean pit disclosed what appeared to be a large placer wash with boulders piled up in the wall, that the surface was slide rock of a depth of 20 feet or more, and that the character of the bedrock in Snowslide gulch, which was just southerly of the Parish No. 2 claim, and on the creek, differed from the pieces of rock that protruded from the surface in the neighborhood of the Borean pit.

After hearing the testimony, the judge of the court below, by consent of counsel, examined the ground; and it was agreed by counsel that the fact of his visit should be referred to in the record of the case. The judge was accompanied by experts representing the views entertained by the respective sides. The court thereafter reached the conclusion that under the evidence there was a failure to prove a discovery in the Parish No. 2 location; that it was located for convenience only; that no assessment work as required by law had been done upon it prior to 1909; that the Oregon claim was also located for convenience; and that no discovery of any mineral-bearing rock in place of any value had ever been made upon that claim by defendant in the case below, or its grantors. The record has much testimony which conflicts with the evidence which we have heretofore quoted; nor is it to be disputed that witnesses of repute testified to the existence of facts which might have warranted the court in concluding that there was a discovery upon the Parish No. 2 location. But this puts the case among those where a substantial conflict calls for an application of the rule which prevents this court from reversing the findings of fact made by the judge. Moreover, it must have been of considerable advantage to the judge to examine the ground itself and to observe carefully those particular conditions to which the experts for the respective sides called his attention. Under such circumstances the findings, being supported by substantial evidence, are not to be disturbed. McIntosh v. Price, 121 Fed. 716, 58 C. C. A. 136; Moore v. Moore, 121 Fed. 737, 58 C. C. A. 19; Hemphill v. Raymond, 144 Fed. 796, 75 C. C. A. 526.

The plaintiff in error urges that, inasmuch as both of the parties to the action were claiming the ground in dispute as being mineral, the least amount of proof of a discovery was sufficient, and that the effect of the trial judge's findings is to work a forfeiture of the ground embraced in the Parish No. 2 lode mining claim. The argument is that the government, not being a party to the suit, is not seeking to declare the Parish No. 2 ground public domain; hence that the court ought

not to consider the possible interests of the United States by declaring the ground public domain. An answer lies in this: Inasmuch as the power of the court to make the finding, to which the argument just referred to is addressed, exists, if the evidence sustains the finding, we cannot set it aside merely because we might not have made such a finding ourselves.

[2] The determination by the court that there was no discovery and no valid location of the Parish No. 2, whether or not the annual labor required by law to be done was performed became immaterial. The issue was tried before the court below, but the trial of it only became necessary because neither of the parties could foresee that the court would hold that the Parish No. 2 location was wholly invalid. We may say, however, that under the rule laid down in Thatcher v. Brown, 190 Fed. 708, wherein the acts of Congress concerning failure to perform assessment work during any given year upon mining claims in Alaska are discussed, there can be no saving of a locator's rights by resumption of work prior to the intervention of other parties.

Plaintiff in error says that a possessio pedis gave it a right to possession and to maintain ejectment. The finding of the court, however, is that the plaintiff below was not and never had been seised, possessed, or entitled to the possession of the Parish No. 2 lode mining claim, and that at the time of the location of the dam and flume and the diversion and appropriation of the water the property described as the Parish No. 2 lode mining claim was a part of the unoccupied public domain of the United States. These findings, being sustained by substantial evidence, cannot be disturbed.

Again, in view of the finding of the court with respect to the Parish No. 2 location, the question of the validity and effect of any custom which may have prevailed in the Harris Mining District by which an entry upon unpatented mining claims was permitted to one seeking to appropriate water flowing through such unpatented mining claims became immaterial.

[3] It is assigned as error that the court permitted the defendant below to amend its answer after trial of the case but before the court took the matter under advisement. The amendment was a plea of noncompliance of plaintiff with the laws requiring annual assessment work upon the Parish No. 2 lode mining claim, and of a failure on the part of plaintiff to represent the claim or to resume work thereon until long after the water and mining locations of the defendant had been made, and of the failure to record the affidavit of annual labor and improvement required by statute. While under the view we take this became immaterial, still the action of the court in allowing such an amendment was clearly within the exercise of sound discretion. Carter's Alaska Code, pt. 4, § 92.

[4] We are asked to hold that the court below should have awarded costs to plaintiff in error because it obtained judgment for restitution of the Lotta claim. The judgment of the court awarded possession of the Lotta claim to the plaintiff below and ordered that plaintiff take nothing further by its complaint, and that, except as to the Lotta claim, the case should be dismissed without cost to either side. The effect of

the judgment, therefore, was in part favorable to the plaintiff below and in part against it. But as section 1342, Compiled Laws of Alaska, allows a plaintiff costs as of course upon a judgment in his favor in an action for the recovery of the possession of real property or where a claim of title or interest in real property or right to the possession thereof arises, the court erred in not regarding the case as within the statute. The fact that plaintiff below did not recover judgment as to all the land in controversy does not change the fact that it had a judgment in its favor. Sierra Union, etc., Co. v. Wolf, 144 Cal. 430, 77 Pac. 1038; Phipps v. Taylor, 15 Or. 484, 16 Pac. 171; Grant v. Oregon Navigation Co., 49 Or. 324, 90 Pac. 178, 1099.

The order is that the judgment of the court below is reversed, and the court below is directed to amend the judgment heretofore made by it by striking out the words "without cost to either side," and substituting therefor words which will award costs to the plaintiff, and. as thus amended the judgment shall stand affirmed.