476

PAUL JUDSON, Appellant, v. E. H. HERRINGTON, Respondent.

Vincent & Eaton for Appellant.

Willedd Andrews for Respondent.

MARKS, J.—This is an appeal from a judgment refusing to quiet plaintiff's title to two unpatented mining claims called Brandywine No. 1, and Brandywine No. 2, in San Bernardino County, and quieting defendant's title to a much larger tract which included those claims within its boundaries.

The complaint is in the usual form of an action to quiet title. The answer denied plaintiff's title and admitted that defendant claimed an interest in the properties. Defendant filed a cross-complaint to quiet his title to an unpatented mining claim called Bentonite No. 5, and described as the northeast quarter of section 31, township 28 south, range 41 east, M. D. M. in San Bernardino County.

Plaintiff traces his title to the Brandywine claims to W. L. Page, the original locator.

The trial court found that Page "attempted" to locate the claims on January 4, 1930, and recorded his location notices on February 3, 1930; that Page "attempted" to locate the mining claims on January 4, 1930, and recorded his location notices on April 10, 1930; that on March 17, 1933, Page and

his wife conveyed the claims to E. T. Webb; that on August 8, 1933, Webb conveyed the property to Paul Judson, the plaintiff here.

The trial court also found that plaintiff, instead of performing his annual assessment work for the mining years ending in 1933 to 1938, inclusive, took advantage of the mining moratorium acts and recorded affidavits for the suspension of assessment work and notice of his desire to hold the mining claims during each of those years, and "that the said plaintiff, Paul Judson, did not in fact, by reason of said notices of suspension of annual assessment work or labor, actually resume or perform any annual assessment work upon said unpatented mining claims herein described and referred to as Brandywine No. 1, and Brandywine No. 2, for the years 1933, 1934, 1935, 1936, 1937 and 1938," and further that "Paul Judson, did perform his annual assessment work or labor upon the unpatented mining claims described in Paragraph 1 of plaintiff's complaint and known as Brandywine No. 1 and Brandywine No. 2, for the assessment year 1938-9."

It was also found that while plaintiff failed to do the assessment work on the claims for the years from 1933 to and including 1938, Herrington "was also in possession of said unpatented mining claims"; that he filed his notice of location on July 1, 1935, with proper descriptions and thereafter performed all necessary annual assessment work on each of the two claims up to the commencement of this action on June 15, 1939.

The material part of the location notice of Page for Brandywine No. 1 reads as follows:

"Commencing at this monument of discovery and running 300 feet westerly, thence 750 feet northerly to northwest corner, thence 600 feet easterly to northeast corner, thence 750 feet southerly to east side center, thence 750 feet southerly to southeast corner, thence 600 feet westerly to southwest corner, thence 750 feet northerly to west side center monument, thence 300 feet easterly to place of beginning.

"By this notice of Location the undersigned claims all forms of mineral deposits contained on, in and under the land above described, situated in unknown Mining District, County of San Bernardino, State of California."

On April 10, 1930, Page recorded a second location notice for the same claim in which the following was added to the description:

"This claim joins Brandywine number 2 on the west and is situated about one and one half miles Easterly from Searles Tunnel on the Southern Pacific Railroad, Owens Valley Branch."

The date of the discovery in this notice was given as January 4, 1930, as it was in the original notice.

The location notice for Brandywine No. 2 gives the date of discovery as January 4, 1930, and contains the following:

"Commencing at this monument thence northerly 300 feet to the northwest corner, thence 1500 feet easterly to the northeast corner, then 600 feet southerly to the southeast corner, thence 1500 feet westerly to the southwest corner, thence 300 feet north to this monument and place of beginning. This claim joins Brandywine Number One on the east. This claim is situated about one and one half miles from the south portal of Searless Tunnel on the Southern Pacific Railroad, Owens Valley Branch.

"By this Notice of Location the undersigned claims all forms of mineral deposits contained on, in and under the land above described, situated in unknown Mining District, County of San Bernardino, State of California."

Page testified that he made his discovery of bentonite in the two claims on January 4, 1930; that he erected discovery monuments on the two claims and put the location notices in each of them confined in Prince Albert tobacco cans; that he erected corner and side monuments on both claims; that all of these monuments were made of rock not less than three feet high and with substantial bases; that he recorded the location notices on February 3, 1930; that he recorded the second location notice of Brandywine No. 1 on April 10, 1930, and placed a duplicate in the tobacco can in the discovery monument. The reason for this second location notice does not appear.

Luis Martinez testified that all the monuments were in place on both claims when he went on them early in 1931 and remained in place for an undetermined length of time. Plaintiff testified that they were in place when he acquired the property in 1933.

Page leased the claims to a Mr. Thompson early in 1930, who went into possession and mined a number of tons of bentonite from them and then abandoned his lease in the fall of that year. Defendant states in his brief that this evidence

of mining operations by Thompson was all stricken out. The record does not bear out this assertion. The only portion stricken was the following answer which referred to Thompson's proof of labor: "No, it was recorded though." Early in 1931, Page leased the claims to Luis Martinez and a Mr. Becker, who immediately commenced mining, shipping and selling bentonite from them.

Martinez testified that he and Becker worked three or four months following their lease early in 1931, for four or five months in 1932, and during the first three months of 1933; that reasonable wages were $5.50 per day each; that they worked more or less each year thereafter; that they mined and sold bentonite from the claims in 1937, 1938, 1939 and 1940.

Robert W. Glendenning testified that he bought bentonite for clients which was mined on the Brandywine claims each year between 1932 and 1940, inclusive; that the mining operations were done by Martinez and Becker except for a part of one year when one John Morehouse did the work for Kohn Company, which purchased the bentonite. Glendenning admitted he bought very little in the years 1935 and 1936. It is apparent that several hundred tons of bentonite was mined and sold from the properties by lessees or employees of plaintiff and his predecessors in interest.

We find in the record a proof of labor for the year ending July 1, 1933. There is evidence that sufficient labor was performed that year so that the finding that the necessary assessment work for that year was not done is contrary to the evidence.

Defendant testified that he first went on the property he now claims in October 1933; that J. H. McNish was living in a cabin a short distance southerly from the Brandywine claims; that he helped McNish complete a dugout to live in; that this was on the property he now claims but southerly from the Brandywine claims; that there were no monuments on either of the Brandywine claims; that defendant found bentonite on the property; that he took samples and had tests made to determine if it was of commercial quality; that cuts were made and shafts sunk from which bentonite was furnished to others to permit them to test its quality.

On July 1, 1935, defendant and his associates located the following property as mining claims: The northeast quarter

of section 32; the northwest quarter of section 32; the southwest quarter of section 29; the southeast quarter of section 30; the northeast quarter of section 31; the northwest quarter of section 31, all in township 28 south, range 41 east, M. D. M. in San Bernardino County, California. Each claim contained 160 acres, more or less. They were named Bentonite Nos. 1 to 6, inclusive, respectively.

As we have observed, defendant in his cross-complaint only sought to quiet his title to Bentonite No. 5, described as the northeast quarter of section 31. According to the undisputed evidence of both parties Brandywine No. 1 is situated within this quarter section, and Brandywine No. 2 is outside of it so the portion of the judgment quieting defendant's title to Brandywine No. 2 lacks the support of a proper pleading as the answer to the complaint only denied plaintiff's title and admitted that defendant claimed some interest in the claims without alleging any interest in him in either of them.

There are no findings on several material questions necessary to a decision of the controversy between the parties.

There is no finding on the question of Page having erected the necessary monuments on the two claims in January, 1930. The indefinite statement in the findings that Page "attempted" to locate the claims cannot be construed as a finding on that question. The great preponderance of the evidence is to the effect that the monuments were properly erected. The only evidence to the contrary is that of defendant that there were no monuments visible when he first saw the Brandywine claims in October, 1933.

There is no finding on the question of the possession of the Brandywine claims by Page and his successors in interest. The only finding on that question is "that while or during the time when, from 1933 up to and including the year 1938, continuously, the plaintiff herein, Paul Judson, failed to perform his annual assessment work . . . E. H. Herrington was also in possession of said unpatented mining claims . . ." Instead of indicating an exclusive possession by defendant this phraseology would indicate a joint possession by him and some other person. Further, Herrington and his associates did not locate their claims until July 1, 1935. Also there is no finding on the question of Page and his successors having worked the claims for five years after their location.

These questions become important because, if Page and his successors had held and had been in possession of and

worked the claims for five years, any defects in the locations would have been cured and patents could have been obtained under the provisions of section 38, chapter 2, title 30, U.S.C.A. (Sec. 2332, U.S.R.S.) See, *Lind* v. *Baker*, 31 Cal. App.2d 631 [88 P.2d 777]. In this connection it should be observed that Page located his claims on January 4, 1930, and that defendant and his associates did not make their locations until after July 1, 1935, more than five years thereafter.

A study of the record leads to the conclusion that the sole ground set forth in the findings for support of the judgment is that Judson and his predecessors failed to do the assessment work on the two claims for each of the mining years ending in 1933 to 1938 inclusive. As we have observed there is ample evidence that the assessment work was done for the first of those years as well as some of the others.

■ Failure to do assessment work on the claims after July 1, 1932, furnished no valid grounds for forfeiture of the claims. Congress suspended the requirement for assessment work for the year ending on July 1, 1933, without the necessity for any action on the part of the locator or owner. Thereafter the requirement for annual assessment work was suspended upon the locator or owner conforming to the requirements of the various mining moratorium acts of Congress which are cited in section 28a, title 30, U.S.C.A. As Judson took those steps and as he was not subject to the payment of income tax during those years he was not required to do assessment work on the claims and they did not become open to relocation because of his failure to do assessment work on them.

■ Defendant seeks to support the judgment on several grounds. He first urges that as Page located the mining claims in 1927, they were not open for location in January, 1930. Page testified that he located some claims in the same district in 1927; that he never did any assessment work and went off and left them. From his testimony it is not at all clear that the two Brandywine claims were covered by the 1927 locations, though for the purpose of this opinion we will assume they were.

Section 4620 U. S. Comp. Stats. 1918, title 30, section 28, U.S.C.A., provides in effect that upon the failure to do the assessment work the claim shall be open to relocation in the same manner as though no location of the same had ever been

made. (See, *Kramer* v. *Gladding, McBean & Co.,* 30 Cal. App.2d 98 [85 P.2d 552].) There was no mining moratorium act in effect during that time. As no assessment work had been done under the 1927 locations the property was open to relocation in 1930.

■ Defendant urges that the location notices recorded February 3, 1930, were void as the descriptions did not contain sufficient reference to some natural object or permanent monument so that they could be readily identified.

A location notice quite similar to the original location notice of Brandywine No. 1, which was not as definite in this respect as the location notice for Brandywine No. 2, was before the court in *Talmadge* v. *St. John,* 129 Cal. 430 [62 P. 79]. In that case, as here, the description located the claim as commencing at a substantial monument erected on it by the locator. This description was held to be sufficient under the law.

■ Defendant maintains that the locations were void because the locator failed to sink a shaft, or tunnel, or open a cut ten feet below the surface of the ground within ninety days after making each location as required by section 2304 of the Public Resources Code, formerly section 1426da of the Civil Code. That section was first adopted in 1935. There was no such requirement in our statutes prior to that time.

There is no finding of any fact from which the conclusion can be drawn that the Page locations were invalid. The finding that the assessment work was not done during the years that plaintiff took advantage of the moratorium acts is not sufficient to support the judgment. From the facts found the conclusion that the two Brandywine claims were open to location on July 1, 1935, may not be drawn. ■ When a locator or his successor is in lawful possession of mining claims that have been properly located, those claims are not open to location by another. (*Belk* v. *Meagher,* 104 U. S. 279 [26 L. Ed. 375]; *Ring* v. *United States Gypsum Co.,* 62 Cal.App. 87 [216 P. 409]; *Lind* v. *Baker, supra.*) It follows that the findings do not support the judgment.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 31, 1942.