**LOWE v. UNITED STATES SMELTING, REFINING & MINING CO. et al.**

No. 11953.

United States Court of Appeals
Ninth Circuit.

June 21, 1949.

Rehearing Denied Sept. 22, 1949.

See 176 F.2d 813.

Harold Banta, Hallock, Donald, Banta & Silven, Baker, Oregon, for appellant.

Southall R. Pfund, San Francisco, Cal., Charles J. Clasby, Fairbanks, Alaska (Pillsbury, Madison & Sutro, Allan R. Moltzen, San Francisco, Cal., of counsel), for appellee.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

These are consolidated cases in which appellees sought and obtained judgment quieting their title to two placer mining claims situate in the Territory of Alaska. 74 F. Supp. 917. The claims had been located by appellees' predecessors in interest in 1908. In 1941 appellant made placer locations overlapping all or the major portion of the ground covered by the earlier locations, and subsequently she instituted in the United States Land Office proceedings to obtain patent. Appellees filed adverse claims in the proceeding and supported them with these suits. An advisory jury impaneled by the court returned a verdict finding that the 1908 locations were valid and that all required annual labor had been done by the claimants or their predecessors.

In the condition of the record, containing as it does no affirmative showing either way on the latter subject, the crucial inquiry is upon which party rested the burden of proof relative to the performance of annual labor. If by the law as it existed at the time of the trial the burden of proving

performance was cast upon appellees the judgment below must be reversed, whereas if it was incumbent on appellant to prove non-performance an affirmance is indicated. The answer to the inquiry turns on the effect to be given certain acts of Congress pertaining to mineral locations in Alaska.

The first clause of § 26 of Ch. 786 of the law of June 6, 1900, 31 Stat. 329, 48 U.S. C.A. § 381, making further provision for the government of Alaska, provided that "the laws of the United States relating to mining claims, mineral locations, and rights incident thereto are hereby extended to the District of Alaska." [1] So far as concerns annual labor, the general mining law as it existed on June 6, 1900, and exists today, is contained in R.S. § 2324, 30 U.S.C.A. § 28, reading, so far as material, as follows: "On each claim located * * * and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year. * * * but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location."

It is familiar law that under this statute the good faith resumption and diligent prosecution of labor on a mining claim forestalls relocation notwithstanding prior failure to do the required representation work. Also, it is settled by the decisions that a junior locator who claims a forfeiture because of the failure of the locator or owner to perform annual labor has the burden of proving it by clear and convincing evidence. Hammer v. Garfield Mining Co., 130 U.S. 291, 301, 9 S.Ct. 548, 32 L.Ed. 964; Quigley v. Gillett, 101 Cal. 462, 35 P. 1040; Lindley on Mines (3d Ed. 1914) Vol. 2, § 645, pp. 1605-1606. This rule is not declared by the statute but is merely expres-

---

[1] The remaining provisions of the section, not here pertinent, dealt with the right to mine for precious metals in the tidal waters of Bering Sea.

488

sive of the traditional hostility of the law toward the enforcement of penalties and forefeitures. Lindley, supra, § 645.

■ On March 2, 1907 Congress passed what is known as the Waskey Act, 34 Stat. 1243, 48 U.S.C.A. § 384, shown on the margin.[2] That Act remained in full force and effect until 1938 when it would appear to have been in part superseded by a third act of Congress passed May 31 of that year, 48 U.S.C.A. § 381. Two provisions of the Waskey Act are here of consequence. Upon failure of the locator or owner of a claim to comply with the annual labor requirement the claim is ipso facto forfeited, it being authoritatively held that the Act repealed by implication the resumption of labor provisions of the general mining laws as incorporated in the law of June 6, 1900. Thatcher v. Brown, 9 Cir., 1911, 190 F. 708, 711; Ebner Gold Mining Co. v. Alaska-Juneau Gold Mining Co., 9 Cir., 1914, 210 F. 599. The second provision of importance is of a procedural nature, quite distinct from the substantive provision relating to forfeiture. It permits the filing for record by the locator or owner of an affidavit showing the performance of labor or the making of improvements in the requisite annual amount. Such affidavit, if duly filed, is made prima facie evidence of the performance of the work, whereas if it is not filed within the time prescribed the burden of proof is cast upon the claimant to establish performance.

■ We turn to the congressional legislation of May 31, 1938, 52 Stat. 588, previously noticed, the relevant portions of which are shown on the margin.[3] It reenacts without change the opening clause of section 26 of the Act of June 6, 1900, extending the general mining laws to Alas-

[2] "An Act To amend the laws governing labor or improvements upon mining claims in Alaska.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That during each year and until patent has been issued therefor, at least one hundred dollars' worth of labor shall be performed or improvements made on, or for the benefit or development of, in accordance with existing law, each mining claim in the district of Alaska heretofore or hereafter located. And the locator or owner of such claim or some other person having knowledge of the facts may also make and file with the said recorder of the district in which the claim shall be situate an affidavit showing the performance of labor or making of improvements to the amount of one hundred dollars as aforesaid and specifying the character and extent of such work. Such affidavit shall set forth the following: First, the name or number of the mining claims and where situated; second, the number of days work done and the character and value of the improvements placed thereon; third, the date of the performance of such labor and of making improvements; fourth, at whose instance the work was done or the improvements made; fifth, the actual amount paid for work and improvement, and by whom paid when the same was not done by the owner. Such affidavit shall be prima facie evidence of the performance of such work or making of such improvements, but if such affidavits be not filed within the time fixed by this Act the burden of proof shall be upon the claimant to establish the performance of such annual work and improvements. And upon failure of the locator or owner of any such claim to comply with the provisions of this Act, as to performance of work and improvements, such claim shall become forfeited and open to location by others as if no location of the same had ever been made. The affidavits required hereby may be made before any officer authorized to administer oaths, and the provisions of sections fifty-three hundred and ninety-two and fifty-three hundred and ninety-three of the Revised Statutes are hereby extended to such affidavits. Said affidavits shall be filed not later than ninety days after the close of the year in which such work is performed. * * *"

[3] "To amend section 26, title I, chapter 1, of the Act entitled 'An Act making further provision for a civil government for Alaska, and for other purposes,' approved June 6, 1900.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 26, title I, chapter 1, of the Act entitled 'An Act making further provision for a civil government for Alaska, and for other purposes,' approved June 6, 1900 (31 Stat. 321), is amended to read as follows:

" 'Sec. 26. The laws of the United States relating to mining claims, mineral locations, and rights incident thereto are hereby extended to the Territory of Alaska: * * *.' "

ka. As observed in footnote 1 above, section 26 as originally enacted opened for exploration and development shoal waters between low and mean high tide on the shores and inlets of Bering Sea. The legislative history of the 1938 amendment indicates that the purpose of Congress was to extend this right to all the shores of Alaska[4]; and the remaining provisions of the amended section are entirely devoted to that subject. These provisions have no relevance here save to the extent they may serve to throw light on the intent of Congress. What is of prime significance is the fact that on the face of the statute the amended section restores to supremacy the general laws of Congress pertaining to mineral locations. Substantial effect must be given this flat and unequivocal provision unless we are prepared to believe that Congress did not intend what it said. If there was no thought at all other than to extend generally the privilege of mining under shore waters it would seem that only the portion of the section dealing with that subject would have been incorporated in the bill.

 In the decision of the trial judge, and in the exceptionally able and helpful briefs of counsel on either side, much space is devoted to an anaylsis of the numerous authorities bearing on the problem presented by the re-enactment of a statute which, as here, has undergone intermediate amendment.[5] It is not thought necessary to burden this opinion with a repetition of the analysis. Enough to say that repeals by implication are regarded with disfavor; but where the latest legislative word on a subject is so incompatible with a previous enactment that the two can not exist together the courts have not hesitated to hold the earlier enactment repealed insofar as it is in conflict with the later. In Thatcher v. Brown, supra, this court thought the automatic forfeiture provision of the Waskey Act irreconcilable with the resumption of work provision of the general mining laws, hence it concluded that the latter was impliedly repealed. The court is now confronted with the obverse of that situation; and we are constrained to hold that the automatic forfeiture provision imported by the Waskey Act is no longer the law for Alaska, and that the more liberal rule of the general mining laws has been restored. Cf. Heinze v. Butte & B. Consol. Min. Co., 9 Cir., 107 F. 165.

The trial court believed that the 1938 Act effected a repeal of the Waskey Act in its entirety, including the provisions permitting the filing of an affidavit of the performance of assessment work and prescribing the effect on the burden of proof of the failure to file the affidavit. This is the fundamental thesis of appellees, also. We disagree. In the first place there is no irreconcilable conflict between the general mining laws and these adjective provisions of the Waskey Act, nor, indeed, is any inconsistency apparent.[6] As already noted, the general

---

[4] Consult H. Rep. No. 1648, 75th Cong., 3d Sess.

[5] The general view on this subject is summarized in 50 Am.Jur., Statutes, § 553, as follows: "A later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first."

Many of the cases indicate that the canon of construction stated is not applicable where the re-enacting act and the intermediate act are so inconsistent with each other that they can not stand together. Consult cases cited in the opinion of the trial court, 74 F.Supp. 917, 922, and following.

[6] Many of the western states have statutes providing for the recording of proofs of labor. At least two of these statutes, those of Idaho and New Mexico, Sec. 47-606, Idaho Code; Compiled Laws of New Mexico 1897, § 2315, contain virtually the same provisions as those of the Waskey Act relative to the shifting of the burden of proof. If these local enactments are inconsistent with the paramount mining laws of Congress they could hardly have escaped condemnation during the many decades they have been on the books, yet so far as we are advised their validity has never been successfully challenged. In discussing the Idaho and New Mexico statutes Lindley has expressed the view that this class of state legislation is unobjectionable. "The several states," he observes, "have a right to define the nature, degree, and effect of evidence, within rational limits, and we do not think these provisions unreasonable." Lindley on Mines, 3d Ed., § 636, p. 1583.

law of Congress does not itself declare where the burden of proof lies relative to the performance of annual labor. The rule casting the burden on the junior locator has been imported by the courts, not under the guise of statutory interpretation but rather as an application of a principle relating to forfeiture generally. In the second place, evidence is totally lacking that Congress by its 1938 legislation intended to disturb these useful and salutary provisions of the Waskey Act—provisions which serve fairly to implement its existing laws.

■ Finally, we turn to the condition of the record and to the bearing this discussion has upon the case before us. During many of the years intervening between 1908 and 1938—years unaffected by the occasional suspensions by Congress of the annual labor requirement—no affidavit of performance of labor appears to have been filed in respect of appellees' locations, nor does the record contain evidence that labor was actually performed on the claims in any of such years. In short, appellees failed on the trial to discharge the burden of proof of performance cast upon them by the currently extant procedural provisions of the Waskey Act. It is true that they made a substantial showing of the resumption and diligent prosecution of work on the claims in the year 1940, prior to appellant's relocation of the ground; but this showing avails them nothing if their rights had become forfeited in the earlier years through noncompliance with the then existing law. Concededly the repeal of the automatic forfeiture provision of the Waskey Act did not operate to restore rights already lost. It was therefore incumbent upon appellees to come forward with evidence tending to show that their rights survived the period in which any failure to represent the claims would ipso facto eventuate in their forfeiture to the United States. In this state of the proof the district court was obliged to find for the appellant, and the judgment must be reversed.

The district court made no finding in respect of the validity of appellant's locations, on the theory, no doubt, that a finding of that nature was unnecessary in view of the conclusion reached. Presumably findings on that subject can be made on the present record, but if thought necessary further evidence may be taken on the point.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.