Vertrees **MOSES** by his father and next friend Wilton Moses, and all other Negroes similarly situated,

v.

**WASHINGTON PARISH SCHOOL BOARD**, a corporation; Leon M. Knight, President; and C. M. Jones, Superintendent, Franklinton, Louisiana.

Civ. A. No. 15973.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 28, 1969.

George M. Strickler, Jr., New Orleans, La., Richard B. Sobol, Washington, D. C., Lolis Elie, Collins, Douglas & Elie, New Orleans, La., for plaintiffs.

W. W. Erwin, Dist. Atty., for the 22nd Judicial District, Franklinton, La., Welton O. Seal, Seal, Lee Fendlason & Branch, Bogalusa, La., France W. Watts, Jr., Watts & Watts, Franklinton, La., for defendants.

## MEMORANDUM OPINION AND ORDER

HEEBE, District Judge.

Due to my temporary absence from the city, on July 2, 1969, Judge Alvin B. Rubin entered an order in which I concurred which provided for a unitary school system in Washington Parish for the 1969–70 school year, D.C., 302 F. Supp. 362. Section G of the general provisions of that order provides:

"G. Principals, teachers, administrative personnel, members of the professional staff, athletic coaches, and other persons in positions of responsibility or authority shall not be assigned, promoted, demoted, or dismissed on a racially discriminatory basis, nor in any manner that makes a school racially identifiable by the race of its staff. Any personnel displaced as a result of a school closing shall be assigned to a similar position in some other school on a racially non-discriminatory basis. This shall not prevent the school board from failing to continue the employment of any teacher who is not entitled to tenure under state law, so long as its decision is reached without racial discrimination of any kind."

Plaintiffs allege that the Washington Parish School Board and its employee James G. Bailey, Superintendent of Public Schools, have violated Section G of the general provisions of the Court order of July 2, 1969, by not re-employing five [1] tenured Negro teachers.[2] On that basis, plaintiffs move (1) for an order of civil contempt against the Washington Parish School Board and James G. Bailey; (2) to require the school board to re-employ the five Negro teachers and to reimburse them the amount of salary they have lost as a result of not being employed from the beginning of the 1969–70 school year; and (3) to grant such other and further relief as may be just and appropriate.

The motion of plaintiffs for civil contempt came on for hearing on October 17, 1969, together with a motion of defendants to modify the orders of this Court dated July 2, 1969 and July 22, 1969, by ordering the reopening of the Jones Creek School and establishing pupil attendance zones for the Jones Creek School and the Varnado High School, all within the Varnado district.

█ We turn now to the motion of plaintiffs for civil contempt. Plaintiffs allege that all five of the Negro teachers involved in this motion are tenured under state law. Defendants contend that only four are tenured and that Vedis Theus is not tenured under state law.

The Louisiana law controlling tenure of teachers is contained in L.R.S. 17:442 which provides in pertinent part:

"Each teacher shall serve a probationary term of three years to be reckoned

---

1. The plaintiffs' original motion named six teachers, but the name of Luella Jones was withdrawn by plaintiff prior to the hearing.

2. The five Negro teachers are (1) Bessie Brown, B.A., 33 years teaching experience in the Parish; (2) Eddie Mae May, B.S., 6 years teaching experience in the Parish; (3) Dewitt Merrell, B.S., 9 years teaching experience in the Parish; (4) Regina Williams, B.A., 4½ years teaching experience in the Parish; and (5) Vedis Theus, B.A., 3 years teaching experience in the Parish.

from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.

"Any teacher found unsatisfactory by the parish or city school board, as the case may be, at the expiration of the said probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of the parish or city, as the case may be, in which he has successfully served his three year probationary term."

If the Washington Parish School Board desired to terminate the services of Vedis Theus at the end of his probationary period, they had to notify him in writing of dismissal. Vedis Theus received the following letter dated August 1, 1969:

"Mr. Verdis Theus
P. O. Box 288
Franklinton, Louisiana

"Dear Mr. Theus:

"In accordance with our latest Federal Court Order, the Washington Parish School Board has been ordered to close some schools and house all students in the remaining schools. Due to this fact, some positions had to be abolished.

"We hereby notify you that your services with the Washington Parish School Board have been terminated effective August 1, 1969, for the school year 1969–70, for the reason stated above.

"If you desire information regarding this notice, please contact us.

"Yours very truly,
James G. Bailey, Jr.
Superintendent"

L.R.S. 17:442 provides that "any teacher found *unsatisfactory* * * * shall be notified in writing * * * he has been discharged or dismissed;" (emphasis supplied). The letter sent to Vedis Theus on August 1, 1969, did not comply with L.R.S. 17:442 and did not deprive him of his tenure. That letter never mentioned the word "unsatisfactory," and the only reason stated for the dismissal was that some positions had to be abolished in accordance with the latest Federal Court Order. We find that Vedis Theus is a tenured teacher under Louisiana law because there is no evidence in the record that he received a letter of dismissal in accordance with L.R.S. 17:442 at the end of his probationary term of teaching.

The five tenured teachers all received identical letters of dismissal (see letter to Verdis Theus quoted above). In the letters of dismissal no mention of incompetency of the teacher is made. However, at the hearing the school board attempted to show that all five of these teachers were incompetent and that their incompetency was the reason for their dismissal. We refrain from passing upon the competency of these teachers and, furthermore, the record before us is inadequate for such a determination.

The issue before us is not whether these five Negro teachers are competent but rather whether the orders of this Court have been violated by the failure of the school board to re-employ these teachers. The meaning of Section G of the general provisions of the Court's order of July 2, 1969, is clear and provides that non-tenured teachers could be terminated but that personnel displaced as a result of a school closing must be assigned to a similar position in some other school on a racially nondiscriminatory basis. Clearly, the intent of that

section is that tenured teachers could not be fired unless, of course, for good cause pursuant to the procedures enumerated in L.R.S. 17:443, which provides in pertinent part:

"A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or *incompetency* or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana * * * and then only if found guilty after a hearing by the school board of the parish, or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.

"If a permanent teacher is found guilty by a school board, after due and Slegal hearing as provided herein, on charges of wilful neglect of duty, or of *incompetency*, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana * * * and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board. As amended Acts 1956, No. 249, § 1." (emphasis supplied)

Defendants contend that we lack jurisdiction over this matter because the teachers failed to pursue their state administrative remedies. Since the defendants failed to institute the proper proceeding against the teachers pursuant to L.R.S. 17:443, they cannot now complain that the teachers have failed to exhaust their administrative remedies. The teachers were not given a chance to exhaust administrative remedies solely because the school board failed to initiate such remedies. The school board was certainly aware of the proper procedure for the dismissal of tenured teachers because Mr. Earl Brown, Assistant Superintendent of Schools for Washington Parish and Supervisor of Classroom Teachers, testified to the proper procedure for firing of tenured teachers. His testimony indicated that the procedure familiar to him was substantially that provided for in L.R.S. 17:443. Therefore, if the Washington Parish School Board voted to dismiss the five Negro teachers because of incompetency, the procedures enumerated in L.R.S. 17:443 should have been followed.

By failing to re-employ the five tenured Negro teachers, we find that the defendants have technically violated the Court order of July 2, 1969 (more particularly Section G of the general provisions) by failure to re-employ the five tenured Negro teachers listed above (see footnote 2). We reserve a ruling on civil contempt for ten days from the entry of this order and will enter an amended order at that time if the defendants have not complied with our order of this date.

The defendants have moved to modify the orders of this Court dated July 2, 1969 and July 22, 1969, by ordering the reopening of the Jones Creek School and establishing pupil attendance zones for the Jones Creek School and the Varnado High School, all within the Varnado district of Washington Parish. The

plaintiffs do not have any objection to the reopening of the Jones Creek School as long as the reopening does not result in the creation of a racially identifiable school by the race of its staff or student body. The plaintiffs suggest that if the Court decides to reopen Jones Creek School, it should be paired with the Varnado High School, thereby relieving any overcrowded conditions at Varnado High School. Having duly considered this matter, we will establish attendance zones with the condition that such attendance zones cannot result in racially identifiable schools.

It is the order of the court that the Washington Parish School Board and its employee James G. Bailey, Superintendent of Public Schools, be, and the same are hereby, directed to re-employ Bessie Brown, Eddie Mae May, Dewitt Merrell, Regina Williams and Vedis Theus as teachers in the Washington Parish School System and to assign them in accordance with Section G of the general provisions of the Court's order of July 2, 1969, and to reimburse these five teachers the amount of salary they have lost as a result of not being employed from the beginning of the 1969–70 school year.

It is further ordered that Section H of the specific provisions of the Court's order of July 2, 1969, be, and the same is hereby, recalled, annulled, vacated, quashed and set aside, and Section H will now read as follows:

"H. *Varnado District*

"1. The Varnado District is divided into two zones for grades 1–8, one zone to the West of the Gulf, Mobile and Ohio railroad tracks and the other zone to the East of the Gulf, Mobile and Ohio railroad tracks.

"2. All students in grades 1–8 residing within the zone West of the railroad tracks shall attend the Varnado School, and all students in grades 1–8 residing within the zone East of the railroad tracks shall attend the Jones Creek School.

"3. This amendment will be null and void if it results in the formation of all-Negro or all-white schools in the Varnado District and is subject to further amendments on the Court's own motion."