IN THE MATTER OF THE APPEAL OF JOE C. HARPER, A DISMISSED STATE EMPLOYEE.

No. 4865.

SEPTEMBER 23, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE M. DOI IN PLACE OF KOBAYASHI, J., DISQUALIFIED.

314

OPINION OF THE COURT BY ABE, J.

In spite of the voluminous transcript, the relevant facts of this case are very simple. It is uncontroverted that on August 21, 1959, when Hawaii became a state, Joe C. Harper occupied the position of warden of the Hawaii prison system. The record shows that in February 1961, Ray Belnap was hired under a contract to head the corrections division of the Department of Social Services. Though Belnap occupied a newly created position, he essentially assumed Harper's duties and Harper by letter dated February 15, 1961 accepted a subordinate position of warden of Oahu Prison.

The record also shows that Harper's old position of warden of the Hawaii prison system was not abolished until September 1, 1961. Miss Noonan, who was then

Director of the Department of Social Services, testified that after the abolishment of that position, Harper was automatically assigned or transferred to the civil service position of superintendent of Oahu Prison. Thereafter, by letter dated October 6, 1961, Harper was summarily dis-missed from that position. Harper contested the dismissal and appealed to the Civil Service Commission. One of the grounds relied upon the appeal by Harper was that the dismissal was ineffective because he was not given ten days' notice as required by HRS § 76-46. After a due hear-ing, the Civil Service Commission held that Harper's appeal was heard under RLH 1955, § 83-4.[1] It also ruled that Harper was not entitled to ten days' notice of dis-missal and sustained his dismissal for cause.

From this ruling Harper appealed to the First Circuit Court. The trial court entered a judgment reversing the ruling of the Civil Service Commission and ordered the reinstatement of Harper. The State agency appealed from this judgment.

I.

The State agency argues that the position of warden of the Hawaii prison system was not a civil service posi-tion and though Harper after a probationary period of

---

[1] This section provided for the appointment and dismissal of the warden of Hawaii prison system and its pertinent part reads:

"The director shall appoint a warden who except as hereinafter provided shall be exempt from civil service. Such appointment shall, for a period of six months, be probationary and during such time he shall serve at the pleasure of the director. Unless sooner removed by the director such appointment shall at the end of six months become permanent subject to removal by the director for cause only. The warden when removed for cause may appeal to the territorial civil service commission within ten days after such action is taken."

It would appear that the Civil Service Commission's ruling was based on the fact that Harper had been originally appointed to his old position of warden of Oahu prison system pursuant to RLH 1955, § 83-4. However, inasmuch as that position had been abolished and Harper had been appointed to another position, it would appear that the Civil Service Commission erroneously heard the appeal under that section.

six months could not be dismissed except for cause, he was not an employee with "tenure" within the provisions of the Reorganization Act of 1959. We find the State agency's argument much ado about nothing.

The legislature enacted the Reorganization Act to reduce the number of departments of government of the territorial system to meet the Hawaii State constitutional requirement of 20 departments.[2] Also the legislature by the Act attempted to assure continued employment in the State government for all employees, civil service and non-civil service, wherever possible. The third paragraph of Section 32[3] specifically provides that an employee without "tenure" upon being transferred to a civil service position for which he is qualified attains civil service status.

Here it is not denied by the State agency that Harper was qualified for the position of superintendent of Oahu Prison. Further, the evidence is uncontroverted that Harper had been offered the top position of the correctional division. Thus, Harper, being qualified, it would appear that when he was assigned or transferred to the civil service position of superintendent of Oahu Prison he acquired the status of a civil service employee.

But to counter this conclusion the State agency argues that Harper could not have been transferred or appointed to a civil service position for the reason that: In August 1961, the State agency initiated a request for the reclassification and permission to fill the position; the Department of Budget and Finance approved the request on

---

[2] Article IV, Section 6.

[3] "An employee of the state who does not have tenure and who may be transferred or appointed to a civil service position as a consequence of this Act shall become a civil service employee without the loss of salary, seniority, prior service credit, vacation, sick leave or other employee benefits or privileges and without the necessity of examination; provided, that such employee or officer possesses the minimum qualifications for the position to which he is transferred or appointed." Act 1, SLH 1959, Second Special Session.

September 18, 1961; this approval was sent to and received by the Department of Personnel Services on September 19, 1961; and the reclassification of the position was not officially established until after October 6, 1961.

As we stated above, when Harper was assigned duties as superintendent of Oahu Prison, a civil service position, he acquired a civil service status. The fact that a request for reclassification of the position was pending did not in any way void or nullify that position. It would be ridiculous to hold that whenever there is a request for the reclassification of a civil service position that position becomes void.

Now, Harper as a civil service employee was entitled to all the rights and privileges under civil service law, HRS c. 76.

## II.

The pertinent portion of HRS § 76-46 provides:

"No dismissal or demotion of a regular employee[4] shall be effective for any purpose unless at least ten days before the effective date thereof the appointing authority shall have given to the employee a written statement setting forth the specific reasons upon which the dismissal or demotion is based . . ."

The statute clearly and unequivocally states that no dismissal "shall be effective" unless the employee to be dismissed is given at least ten days' notice before the date of his dismissal. We are not here to question the wisdom of such a provision but only to interpret the statute. As noted above, the statute being clear and unambiguous there is nothing left for this court to construe. *Young* v. *Kwock,* 52 Haw. 273, 474 P.2d 285 (1970); *State* v.

---

[4] " 'Regular employee' means an employee who has been appointed to a position in the civil service in accordance with this chapter and who has successfully completed his initial probation period." HRS § 76-11(15).

*Tamanaha,* 46 Haw. 345, 379 P.2d 592 (1963) ; *Pub. Ut. Comm.* v. *Narimatsu,* 41 Haw. 398 (1956). Here, the State agency failed to meet the requirement and therefore the dismissal was ineffective.

Also, the State agency argues that the notice of dismissal should be construed to become effective ten days after its delivery to Harper. The letter clearly and specifically stated that Harper was being summarily dismissed as of the date of the letter[5] and there is nothing for this court to construe but to give the letter the usual meaning of the words used therein.

We also find the argument of the State agency that Harper waived his objection of the State agency's failure to give him ten days' notice of dismissal because he did not notify the agency of this shortcoming so that "the appointing authority could have inserted an appropriate effective date" both illogical and ridiculous. Why should a duty be imposed upon a party to inform his adversary of the latter's mistake and thereby prejudice his rights?

On the other hand, the State agency could have remedied its mistake easily by its own action. It could have given Harper a new ten days' notice of dismissal; but it chose not to do so, and it must bear the consequences of its failure to meet the requirement of the statute.

Affirmed.

*Nobuki Kamida,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the briefs), for appellees-appellants.

*Michiro Watanabe* for appellant-appellee.

---

[5] The pertinent part of the letter reads:
"This is to notify you that as of this date you are summarily discharged, dismissed and removed as Warden of Oahu Prison."