JOSEPH A. SHORBA and HAWAII STATE
TEACHERS ASSOCIATION, Plaintiffs-Appellants
*v.* SHIRO AMIOKA, Superintendent
of Education, Defendant-Appellee

No. 5249

OCTOBER 10, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by Joseph Shorba and Hawaii State Teachers Association (HSTA) from a circuit court judgment dismissing a declaratory judgment action brought by them, as plaintiffs, against Shiro Amioka, superintendent of education, as defendant. The judgment was entered upon defendant's motion to dismiss for failure

of plaintiffs to state a claim upon which relief could be granted.

Shorba was a tenured teacher of the Department of Education (DOE), assigned to Lanikai Elementary School, whose employment contract was terminated without a hearing provided in HRS § 297-12.[1]

HSTA is an employee organization certified by Hawaii Public Employment Relations Board (HPERB), under HRS § 89-7, as the exclusive bargaining representative of the teachers' bargaining unit of DOE employees. As such, under HRS § 89-8 (a), it is authorized to represent all employees in the bargaining unit without regard to their membership in the organization.[2]

The record indicates that at all times pertinent to this case, Shorba was a member of Hawaii Federation of Teachers (HFT).

In their action, plaintiffs sought a judgment declar-

---

[1]HRS § 297-12 provides: "In case of demotion or termination of any contract, the department of education shall furnish the teacher a written notice signed by the superintendent of education of its intention to consider the demotion or termination of his contract with full specification of the grounds for such consideration. Unless the teacher so notified, within ten days subsequent to the receipt of the notice, demands in writing an opportunity to appear before the department and offer reasons against the demotion or termination, the department may proceed with formal action for demotion or termination of the contract. If the teacher, within ten days after receipt of notice from the superintendent, demands in writing a hearing before the department, the department shall set a time for the hearing within thirty days from the date of the written demand and the superintendent shall give the teacher at least fifteen days' notice in writing of the time and place of the hearing. Chapter 91 shall apply to the notice and to all other aspects of the hearing. * * * The hearing shall be conducted by a majority of the board of education and be confined to the grounds given for the termination. In lieu of a hearing by the board, the board may appoint a hearing officer to conduct hearings in any case regarding teacher demotion or termination of contract. * * * The department may suspend a teacher pending final action to terminate his contract, if, in its judgment, the character of the charges warrant such action. * * * If the decision of the board is against demotion or termination of the contract, the charges and the record of the hearing shall be physically expunged and, if the teacher has been suspended, he shall be paid his full salary for the period of the suspension."

[2]HRS § 89-8 (a) provides: "As exclusive representative, it shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership."

ing that the letter of James Crane, executive secretary of HFT, to defendant, dated May 24, 1971, and received by the latter on the following day, constituted a timely and sufficient demand for a hearing on DOE's intention to consider the termination of Shorba's contract; that the termination of Shorba's contract without a hearing was illegal; and that Shorba is entitled to reinstatement to his former position with back pay.

Plaintiffs based their claim for relief upon the following facts alleged in the complaint and shown in the copies of the letters attached to the complaint as exhibits thereto.

On May 12, 1971, Albert Miyasato, district superintendent of the Windward Oahu District of DOE, wrote to Shorba: "In compliance with Legal Reference # 5110, Regulation # 5110, and Procedure #5110 contained in the School Code * * * , this is to inform you that you are hereby temporarily suspended without pay as a teacher in Lanikai Elementary School, effective May 14, 1971. Your ten-day suspension with pay will therefore terminate on Thursday, May 13, 1971.[3] The Superintendent of Education will submit a statement to you covering the charges on which this action is based as prescribed by H.R.S. 297-12 and his decision as to whether your contract will be terminated, as I have recommended."

By letter dated May 14, 1971, defendant officially notified Shorba that he accepted the recommendation for his dismissal; detailed the charges against him; and advised him of his right to a hearing before DOE upon submission of a written request within ten days after his receipt of the letter. Shorba received the letter on May 17.

On May 24, 1971, Crane wrote to defendant as follows: "This letter is in reference to your suspension action against Mr. Joseph A. Shorba, teacher at Lanikai Elementary School. According to Policy #5110, legal reference

---

[3]This refers to leave of absence with pay previously imposed on Shorba by the principal of Lanikai Elementary School pursuant to Regulation #5110 of the school code.

HRS 297-12, we hereby request a hearing before the Department concerning this action. I hereby request a full specification of the charges against Mr. Shorba according to Chapter 91." The letter was delivered to defendant on the following day.

Defendant did not respond to Crane's letter until June 4, 1971. On that day, he wrote both to Shorba and to Crane. In his letter to Shorba, he stated: "Because you did not demand, in writing, an opportunity to appear before the Department of Education and offer reasons against your termination within the ten (10) days specified, your employment contract with the Department of Education is terminated effective May 14, 1971." To Crane, he wrote: "Your letter of May 24, 1971 regarding the suspension action against Mr. Joseph A. Shorba, teacher at Lanikai Elementary School, is acknowledged. The suspension action to which you refer, was directed by Dr. Albert H. Miyasato, District Superintendent of the Windward Oahu District. Inquiry regarding this action should be referred to the District Superintendent."

Crane received defendant's letter on June 12, 1971. Four days later, on June 16, he sent a reply to defendant, stating that the action to terminate Shorba's contract was taken by defendant, not by Miyasato, and the hearing on the termination should be set up by him.

On July 16, 1971, Albert Hamai, executive secretary of HSTA, wrote to defendant, informing him that Shorba sought his assistance, and requesting that Shorba be given a hearing on the termination of his contract inasmuch as he responded to defendant's letter of May 14, through HFT, within ten days after its receipt.

Defendant answered Hamai's letter on July 20, 1971, enclosing copies of the pertinent correspondence, and stating: "Your attention is particularly called to the letter from Mr. James D. Crane dated May 24, 1971 which is apparently the correspondence you referred to in paragraph 2 of your letter. This letter specifically refers to

the *suspension* action taken against Mr. Joseph A. Shorba, * * * and in no instance is there a request made for a hearing concerning the *termination* of his contract. We are aware that Mr. Crane believes that such a request is implied in this letter. However, such an inference cannot be drawn from the wording of the letter. The suspension action referred to was directed by the District Superintendent of the Windward Oahu District Office, and Mr. Crane was so advised by my letter of June 4, 1971. Mr. Shorba nor his representative Mr. Crane requested a hearing regarding the termination of Mr. Shorba's contract within the ten-day period prescribed by HRS 297-12. For this reason, Mr. Shorba's contract was terminated by my letter dated June 4, 1971."

After the filing of defendant's motion to dismiss, plaintiffs filed a motion for summary judgment, supported by Shorba's affidavit deposing that the copies of the letters attached as exhibits to the complaint were true copies of the original letters. Defendant did not file any opposing affidavit.

The circuit court set the two motions for hearing at the same time; heard the motion to dismiss; ruled thereon; and, in view of the ruling on the motion to dismiss, did not reach the motion for summary judgment.

There are two questions for decision on this appeal, the second being contingent on the decision on the first question. The first question is whether Crane's letter of May 24, 1971, to defendant constituted a valid demand for a hearing under HRS § 297-12 on DOE's intention to terminate Shorba's contract. The second question is, if the decision on the first question should be in his favor, whether Shorba would be entitled to be reinstated to his former position with back pay without going through the prescribed hearing.

On the first question, Shorba contends that Crane's letter of May 24, 1971, to defendant constituted a valid demand for a hearing on the termination of his contract.

Defendant's position is that the letter did not constitute a valid demand for two reasons: first, because it requested a hearing on defendant's suspension action against Shorba, instead of a hearing on the termination of Shorba's contract; and, second, because Crane had no authority to make a demand on behalf of Shorba. Defendant does not question the timeliness of Crane's letter.

With regard to the first reason given by defendant for denying a hearing on the termination of Shorba's contract, Crane's letter presents a situation in which the rationale in *Wood* v. *Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917), applies.

That case involved an inartistically drawn employment agreement which lacked precise words of promise. In holding that there was a valid contract, Judge Cardozo stated for the court: "We think * * * that * * * a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed. * * * If that is so, there is a contract."

The quoted statement is particularly cogent in this case, which involves procedural due process affecting a teacher's tenured livelihood.

Crane's letter might not have demanded a hearing on the termination of Shorba's contract in so many words, but we think that such demand is fairly to be implied from the following facts: (1) Shorba was placed on suspension without pay, effective May 14, 1971, the day defendant wrote to him regarding DOE's intention to consider the termination of his contract; (2) the suspension was in effect when Crane wrote his letter; (3) such suspension action could have been taken only under HRS § 297-12 in connection with the initiation of a proceeding to terminate Shorba's contract; (4) Crane requested a hearing in accordance with "Policy # 5110, legal refer-

ence HRS 297-12"; and (5) there is no provision in the statutes or the school code which accords a hearing only on such suspension action.

The fact that Shorba was placed on suspension without pay, effective May 14, 1971, appears in Miyasato's letter to Shorba. Defendant admits that the suspension was in effect when Crane wrote his letter.

Miyasato informed Shorba that he was suspended without pay "in compliance with Legal Reference #5110, Regulation #5110, and Procedure #5110" of the school code.

Legal Reference # 5110 is a reference to HRS § 297-12. The statute provides for a teacher's suspension in connection with a proceeding for the termination of contract. The specific language of the statute is: "The department may suspend a teacher pending final action to terminate his contract if, in its judgment, the character of the charges warrant such action." Such suspension is without pay because a further provision in the same section states: "If the decision * * * is against * * * termination of the contract, * * * and, if the teacher has been suspended, he shall be paid his full salary for the period of the suspension."

Regulation # 5110 authorizes a principal to place a classroom teacher on leave of absence with pay, in the best interest of the student's welfare, for a period not to exceed ten days. It does not authorize a district superintendent to impose a suspension without pay.

Procedure # 5110 is obviously a procedure applicable to the imposition of leave of absence with pay by a principal under Regulation # 5110, although it is captioned: "Procedure Imposing Suspension on Teachers." It does not apply to a teacher's suspension without pay.

The index to the school code contains no reference to any code provision regarding suspension of a teacher without pay. Thus, the suspension mentioned in Miyasato's letter may only be deemed a departmental suspen-

sion action taken under HRS § 297-12 in connection with the proceeding to terminate Shorba's contract.

HRS § 297-12 grants to the teacher, who has been notified of DOE's intention to consider the termination of his contract, a right to appear before the department and offer reasons against the termination. It does not give the teacher a separate right to be heard on the suspension action. A separate hearing on the suspension action is unnecessary because, if the teacher prevails in the termination proceeding, he will be fully compensated for the period of the suspension.

In his letter of August 17, 1971, to plaintiffs' attorney, defendant wrote: "Mr. Crane is an intelligent man and well-versed in the disciplinary procedures set forth in laws pertaining to the Department of Education. I find it difficult to believe that Mr. Crane meant anything other than what he wrote * * * . I have had my staff review all previous letters written by Mr. Crane requesting termination hearings before the Department. In all instance, Mr. Crane had referred directly to the letter announcing intention to terminate. In no instance is there a reference to an appeal against suspension action in connection with a termination hearing request. Here, however, he specifically requested a hearing on the suspension action."

Contrary to defendant, precisely because Crane has more than a passing acquaintance with the laws and proceedings relating to DOE teachers, we find it difficult to construe his letter as anything other than a demand for a hearing on the termination of Shorba's contract. As a person with an expertise on DOE disciplinary procedures, why should Crane have asked for a hearing on the suspension action, as such, knowing full well that there is no provision in the statutes or the school code for such hearing?

In the light of the facts stated above, for this court to countenance the denial of a hearing on the termination of Shorba's contract for the first reason given by defendant

is to take the law back to the bygone days "when the precise word was the sovereign talisman." This is not to say that precision in the use of language is never important in the law. There are situations in which precision is essential. This case does not involve such a situation.

The second reason given by defendant in support of his position that Crane's letter did not constitute a valid demand for a hearing on the termination of Shorba's contract, namely, that Crane had no authority to make a demand on behalf of Shorba, is based on his construction of HRS §§ 89-2 (10) and 89-8 (a) .[4] Defendant construes those provisions as granting exclusive authority to the employee organization certified as the exclusive bargaining representative to represent all bargaining unit employees, without regard to employee organization membership, on all matters relating to employment before the employer, and as prohibiting all other employee organizations from representing their members before the employer even to the limited extent of presenting written demands for hearings on their behalf.

In the view we take of this aspect of the case, it is not necessary for this court to decide whether the statutory construction mentioned above is correct or incorrect. The question, as we see it, may be stated as follows: Granting that such construction of the statute is correct as a general proposition, was the defendant warranted in recognizing Crane's limited representation of Shorba in demanding a hearing on behalf of Shorba, in the situation which existed at the time he received Crane's letter?

---

[4]HRS § 89-2 (10) is a definition of exclusive representative, and defines such representative as "the employee ·organization, which as a result of certification by the board, has the right to be the collective bargaining agent of all employees in an appropriate bargaining unit without discrimination and without regard to employee organization membership." HRS § 89-8 (a) provides that the certified organization "shall be the exclusive representative of all employees in the unit," and, as such, "shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership."

HRS §§ 89-2 (10) and 89-8 (a) are parts of HRS c. 89, relating to collective bargaining in public employment, being compilation of S.L.H. 1970, c. 171, effective July 1, 1970.

During the period defendant had the Shorba matter under consideration, DOE, the teacher organizations, and the teachers were having their first real exposure to HRS c. 89. On May 19, 1971, the election for the determination of the exclusive bargaining representative of DOE teachers was held between HSTA and HFT, with the former emerging as the winner. HPERB certified the result of the election two days later, on May 21, 1971.

Shorba received defendant's letter informing him of DOE's intention to terminate his contract on May 17, 1971, two days before the election. Upon receipt of the letter, it was natural for Shorba, as a member of HFT, to seek Crane's assistance. Crane wrote his letter to defendant on May 24, 1971, three days after the certification of HSTA. Defendant received Crane's letter on the following day, May 25, 1971.

At the time Crane wrote his letter, he presumably was not fully cognizant of the scope of exclusive representation of the certified organization under the statute. The same was presumably also true of defendant, when he received the letter, for he did not immediately question Crane's authority to write it on behalf of Shorba. If defendant had instantly questioned Crane's authority, Shorba would have had two days in which to present a timely demand for a hearing either personally or through HSTA.

Also, the recognition by defendant, at the time of his receipt of Crane's letter, of Crane's representation of Shorba for the limited purpose of demanding a hearing on Shorba's behalf would not have prejudiced HSTA in any manner.

In the situation described above, we think that de-

fendant was warranted in recognizing Crane's representation of Shorba.

Defendant's assertion that Crane was without authority to represent Shorba is an afterthought. Defendant conceived it as an additional justification for his action after he terminated Shorba's contract without a hearing for the first reason. It was not mentioned either in defendant's letter of June 4, 1971, to Crane, or in his letter of July 20, 1971, to Hamai. Nor was it mentioned in Crane's letter of August 17, 1971, to plaintiffs' attorney. In his letter to Hamai, defendant referred to Crane as Shorba's "representative Mr. Crane".

As a matter of fact, HSTA's position in this case is that defendant's initial recognition of Crane as Shorba's representative was proper.

We do not think that justice will be served in this case by sustaining defendant's action in terminating Shorba's contract without a hearing for the second reason at this late stage, when defendant originally based his action solely on the first reason.

Defendant cites *In re Harper*, 52 Haw. 313, 475 P.2d 53 (1970), and argues that the holding in that case which requires the government agency to follow the prescribed statutory procedure in a dismissal proceeding is applicable to the employee and requires the employee likewise to follow the prescribed procedure. That case is not apposite here.

*Harper* involved HRS § 76-46, which provided that no dismissal or demotion of an employee covered by the State civil service law "shall be effective for any purpose unless at least ten days before the effective date thereof the appointing authority shall have given to the employee a written statement setting forth the specific reasons upon which the dismissal or demotion is based and filed a copy of the statement with the director of personnel services." In that case, the appointing authority did not give the required written statement to the employee nor did he

file the statement with the director of personnel services. Here, as we have shown, the demand for a hearing required of Shorba was duly given on Shorba's behalf by Crane.

We hold that the circuit court erred in granting defendant's motion to dismiss the action and in failing to consider plaintiffs' motion for summary judgment. We are of the opinion that, on the motion for summary judgment, the record in this case is sufficient for the entry of a judgment declaring that Crane's letter of May 24, 1971, constituted a valid demand for a hearing on DOE's intention to terminate Shorba's contract; that the termination of Shorba's contract without a hearing is invalid; and that Shorba is entitled to an opportunity to appear before DOE and offer reasons against the termination as provided in HRS § 297-12.

With respect to plaintiffs' request for a declaration that Shorba is entitled to reinstatement to his former position with back pay, we hold that Shorba is not entitled to such relief at this time; that he remains on suspension without pay pending the hearing; and that, in the event the hearing results in his favor, he will then be entitled to resume his former position with back pay under the provision of HRS § 297-12, which requires the payment of full salary for the period of the suspension to the suspended teacher in such case.

Reversed, and remanded to the circuit court with direction to enter a judgment in accordance with this opinion.

*Thomas M. Pico, Jr.* (*Gill & Pico* of counsel) , for plaintiffs-appellants.

*Roy M. Miyamoto,* Deputy Attorney General (*George Pai,* Attorney General, with him on the brief) , for defendant-appellee.