**MATANUSKA–SUSITNA BOROUGH et al., Appellants,**

**v.**

**W. Burton LUM and Helen Lum, Appellees.**

**W. Burton LUM and Helen Lum, Cross-Appellants,**

**v.**

**MATANUSKA–SUSITNA BOROUGH et al., Cross-Appellees.**

Nos. 2241, 2250.

Supreme Court of Alaska.

Aug. 8, 1975.

W. C. Arnold, Anchorage, John D. Shaw, Palmer, for appellants and cross-appellees.

John R. Strachan, Anchorage, for appellees and cross-appellants.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

CONNOR, Justice.

This case brings up for review several questions about the procedures employed, and the rights of tenured teachers, in nonretention proceedings. W. Burton Lum and Helen Lum were both tenured teachers with the Matanuska-Susitna School District. In March of 1972, they both received notices of nonretention advising them that they would not be retained as teachers for the 1972–73 school year. The notices stated causes and detailed particulars. The Lums were both charged with incompetency and substantial noncompliance with rules and directives.[1] The school board

---

1. AS 14.20.175 provides in part:

"(b) A teacher who has acquired tenure rights is subject to nonretention for the following school year only for the following causes:

(1) incompetency, which is defined as the inability or the unintentional or intentional failure to perform the teacher's customary teaching duties in a satisfactory manner;

(2) immorality, which is defined as the commission of an act which, under the laws of the state, constitutes a crime involving moral turpitude;

(3) substantial noncompliance with the school laws of the state, the regulations or bylaws of the department, the bylaws of the district, or the written rules of the superintendent; or

(4) a necessary reduction of staff occasioned by a decrease in school attendance."

provided the Lums with a public hearing, at which the Lums were represented by counsel. In August of 1972 the school board issued a decision sustaining the non-retention of the Lums.

On September 1, 1972, the Lums commenced an action in the superior court, seeking a trial de novo pursuant to AS 14.-20.205, which provides:

"If a school board or appeal panel reaches a decision unfavorable to a teacher, the teacher is entitled to a de novo trial in the superior court. However, a teacher who has not attained tenure rights is not entitled to judicial review according to this section."

On January 9, 1973, the superior court denied a trial de novo, and ruled that the Lums were limited to a judicial review on the record made before the school board. The Lums then petitioned this court for review of that ruling, but the petition was denied.

Subsequently, the superior court held a hearing on the record only. On April 22, 1974, the court reversed Helen Lum's dismissal and remanded her case to the school board for action not inconsistent with the court's decision. At the same time the superior court remanded W. Burton Lum's case to the school board for further consideration. From this ruling the school board appeals and the Lums cross-appeal.

The school board presents two main arguments on appeal:

(1) The school board claims that the Lums failed to appeal or seek review from the school board's initial decision in a timely manner;

(2) The school board urges that neither the superior court nor this court can reverse the school board's decision unless the record shows a lack of substantial evidence to support the school board's findings; it is contended that there was substantial evidence to support the board's decision and the reversal thereof by the superior court was error.

By cross-appeal Mr. Lum contends that AS 14.20.205 guarantees him a trial de novo, and that the superior court should not have remanded his case to the school board. By cross-appeal Mrs. Lum contends that the superior court should not merely have reversed her dismissal, with a remand to the school board, but that it should have ordered her reinstated with full back pay.

*Timeliness of Appeal to Superior Court*

The school board asserts that the 29-day delay between the school board's decision on August 3, 1972, and the filing of the superior court action on September 1, 1972, renders the Lums' appeal untimely. This is said to contravene the 10-day provision of District Court Civil Rule 21(e).[2]

■ Initially it should be noted that while a board decision on Mr. Lum was issued on August 3, 1972, the decision concerning Mrs. Lum appears to have been rendered on August 24, 1972. Since the complaint alleges that Mrs. Lum was dismissed on August 24, and since appellants' answer failed to contravene that allegation, it must be taken as true that, for the purposes of this litigation, Mrs. Lum's dismissal date was August 24, 1972. Under these conditions, Mrs. Lum's appeal to the superior court was certainly timely, even under District Court Civil Rule 21(e), since it was filed eight days after the board's action.

■ However, the reliance on Rule 21(e) seems to be misplaced. District

---

2. District Court Civil Rule 21(e) concerns the time for filing a petition for review with the superior court. The rule states:

"The time within which a petition for review may be filed shall be 10 days from the date of the order or decisions sought to be reviewed, except that upon a showing of excusable neglect based on a failure of a party to learn of the order or decision the superior court may extend the time for filing the petition not exceeding 10 days from the expiration of the original time herein prescribed."

Court Rule 21 is concerned with "petitions for review." Rule 21(a) provides:

> "An aggrieved party may petition the superior court for review of any order or decision of a magistrate court or an administrative agency *where there is no appeal or other plain, speedy or adequate remedy,* and where the magistrate or administrative agency appears to have exercised his or its functions erroneously or to have exceeded his or its jurisdiction, to the injury of some substantial right of such party.
>
> Relief heretofore available by writs of review, certiorari, mandamus, prohibition, and other writs may be obtained by petition for review under the practice prescribed in these rules." (emphasis added)

Since the legislature had provided for a trial de novo for any tenured teacher who was dismissed by a school board or appeal panel,[3] a plain, speedy and adequate remedy at law existed within the meaning of Rule 21(a). This means that Rule 21(e) was inapplicable.

At the time that appellees sought a trial de novo in the superior court, it was unclear what law controlled the time for filing. If school board decisions such as the present one could be construed to fall within the Administrative Procedure Act, then AS 44.62.560(a) of that Act would have controlled. AS 44.62.560(a) establishes a 30-day time period for appealing from administrative rulings. However, the Administrative Procedure Act by its express terms did not apply to local school boards.[4]

■ The trial judge apparently felt that Appellate Rule 45(a)(2) controlled, as he so indicated in a letter dated July 27, 1973. While Appellate Rule 45(a)(2) sets a 30-day deadline for appealing from administrative rulings, that rule did not become effective until March of 1973.[5] Thus it would not have controlled litigation commenced in September, 1972.

■ Apparently no express provision covered the time for filing in this case. Under these circumstances our ruling in *McCarrey v. Commissioner of Natural Resources,* 526 P.2d 1353 (Alaska 1974), is useful. In *McCarrey* the appellant had waited over five months before seeking judicial review of an administrative determination. It was somewhat uncertain as to whether the 30-day provision in the Administrative Procedure Act was to govern. We stated that in May of 1971 when the superior court action was commenced,

> ". . . [A] great deal of confusion existed concerning the method and procedures by which appeals from an administrative decision might be taken to the superior court. The matter has now been resolved by adoption of Appellate Rule 45. . . . *Moreover, failure to file an appeal within strict time limitations does not create a jurisdictional defect.* Courts in Alaska have authority to relax the strict requirements of the rules in order to avoid surprise or a serious miscarriage of justice, or otherwise in aid of their appellate jurisdiction." 526 P.2d, at 1355. (footnotes omitted, emphasis added)

Since the Administrative Procedure Act sets a 30-day time period and since Appellate Rule 45(a)(2) now sets a 30-day period for all administrative appeals, we conclude that an appeal brought 29 days after the final administrative decision was made was timely.

---

3. AS 14.20.205 provides:
   "If a school board or appeal panel reaches a decision unfavorable to a teacher, the teacher is entitled to a de novo trial in the superior court. However, a teacher who has not attained tenure rights is not entitled to judicial review according to this section."

4. *See* AS 44.62.330.

5. Appellate Rule 45(i) says that these rules superceded all other procedural methods in Alaska for appealing from administrative rulings to the state's courts.

*The Trial De Novo Question*

Mr. Lum, as cross-appellant, argues that the express language of AS 14.20.205 guarantees him the right to a trial de novo. The statute provides:

"If a school board or appeal panel reaches a decision unfavorable to a teacher, the teacher is entitled to a de novo trial in the superior court. However, a teacher who has not attained tenure rights is not entitled to judicial review according to this section."

Lum claims that the legislative intent is clear from this language and that the purpose of the act is to protect tenured teachers from potentially biased school boards. He asserts that the record in this case in fact shows just such a bias. The board, in its cross-reply brief, refers us to the arguments on the same point which the board made in response to the Lums' petition for review.

Pared to its essence, the board's earlier brief argues that *Keiner v. City of Anchorage,* 378 P.2d 406 (Alaska 1963), disposes of this issue in regard to all administrative reviews, and that even if *Keiner* is not dispositive of the issue, the doctrine of separation of powers requires that AS 14.-20.205 be declared unconstitutional or be restricted severely in its meaning. The brief also argues that a chronological review of the statutes in question shows a clear legislative intent to repeal the special de novo rights granted by AS 14.20.205. We find none of these arguments totally persuasive.

In *Keiner v. City of Anchorage, supra,* the city brought proceedings to have Keiner's building declared a fire and health hazard, to declare it a public nuisance, and to order it removed. After an initial determination by the city manager, Keiner filed objections, and the city council, acting as a board of adjustment, found the building hazardous and ordered its removal. On appeal to the superior court and to this court Keiner claimed the right to a de novo judicial determination of whether his building constituted a fire and health hazard. In rejecting that claim, this court held that a territorial statute, § 16–1–35, Twenty-fourth, A.C.L.A.1949, providing for an appeal from such municipal actions, and for de novo hearing and trial in the territorial district court, was superseded by the Administrative Procedure Act which became law in 1959, after statehood.

The school board itself acknowledges that *Keiner* does not mandate review on the record. As the board notes, "this court has treated all appeals to the superior court from administrative agencies as being on the record unless otherwise ordered in the discretion of the superior court." Thus *Keiner* does not foreclose the possibility of requiring a trial de novo for tenured teachers.

■ The "separation of powers" argument asserts that to require a full trial de novo by the superior court encroaches on the executive powers of an administrative agency such as the school board. It is urged that this is unconstitutional. This overlooks, however, the scope of administrative power delegated by the legislature to the school board. At the same time that it has empowered these boards to terminate teachers, it has also guaranteed tenure rights to teachers. The statute granting a trial de novo to teachers can hardly be said to violate the separation of powers. We shall not consider the point further.[6]

■ We shall now turn to a chronological review of certain pertinent statutes.

In 1949 a territorial statute provided that determinations of municipal boards of adjustment "shall be heard and tried de novo in the District Court."[7]

6. For a case in which we rejected a similar argument, in the context of real property tax assessments, see Winegardner v. Greater An-

*chorage Area Borough,* 534 P.2d 541 (Alaska 1975).

7. § 16–1–35, Twenty-fourth, A.C.L.A.1949.

In 1959 the state adopted title 22, the statutory scheme governing the judiciary. AS 22.10.020(a) provides in part:

"All hearings on appeal from any final order or judgment of a subordinate court or administrative agency shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part."[8]

In 1963 Mr. Keiner appealed from the denial of his demand for a trial de novo from a municipal board's condemnation of his property. As noted above, in *Keiner v. City of Anchorage, supra,* this court held that the 1949 statute had been superseded by the 1959 act, and thus de novo trials were discretionary.

In 1966 the legislature enacted an entirely revised education code. *Alaska Statutes,* title 14. AS 14.20.205 provided tenured teachers with a right to a trial de novo in the superior court following an unfavorable ruling by a school board.[9]

In 1970 the legislature amended AS 22.10.020, in a manner irrelevant to this case. However, it reenacted the de novo provision, stating:

"All hearings on appeal from any final order or judgment of a subordinate court or administrative agency shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part."[10]

The board argues in effect that the last statute in time repeals pre-existing statutes, and that since the 1970 judiciary statute essentially states that *all* appeals from administrative agencies are merely discretionarily de novo, this supersedes the 1966 Education statute which expressly mandates de novo reviews for tenured teachers. We find this argument unpersuasive.

In support of its "chronology" argument, the board relies on Professor Sutherland's work on statutory construction,[11] and the cases cited therein. Paraphrased, the cited portions of Sutherland hold that where a statute has been modified by an intermediate act, and where the initial act is then reenacted, the *general rule* is that the intermediate act remains in force. A well-recognized caveat to the *general rule* holds that the intermediate act is impliedly repealed if its terms and the reenactment's terms are "wholly inconsistent." The board argues that in 1959 the legislature made all administrative appeals *discretionarily* de novo; in 1966 it carved out an intermediate act which made tenured teachers' appeals mandatorily de novo; in 1970 it reenacted the original law making *all* administrative appeals discretionarily de novo. Since *all* appeals can't be discretionarily de novo if tenured teachers' appeals are mandatorily de novo, the board finds the two provisions "wholly inconsistent" and hence the 1970 act impliedly repeals the 1966 act.

This argument might be sound if the intermediate act of 1966 had been an *amendment* to the general rule of 1959 or had been a modification of the statutory rules governing the judiciary.[12] However, the 1966 act is more properly characterized as a "special" statute dealing with education. On its face, this title 14 statute concerning tenured teachers bears no relation to the general provisions governing judicial appeals, which is covered by title 22.[13]

---

8. The Michie Company, in its bound volume, has changed the session law phraseology from "All hearings . . . ." to "The hearings . . . ." However, the language used in the session laws is controlling in this case.

9. AS 14.20.205 was amended in 1968 but the amendment merely deleted surplus language.

10. *See* footnote 8 *supra.*

11. J. G. Sutherland, Statutory Construction (4th ed. 1972).

12. All of the cases cited by the school board appear to fit this type of description. *See, e. g., United States Smelting Refining & Mining Co. v. Loew,* 74 F.Supp. 917, 11 Alaska 429 (1947).

13. Several cases have found the titles of various legislation helpful in determining similar issues of judicial construction. *See Allison v. Hatton,* 46 Or. 370, 80 P. 101 (1905); *Eddy v. Kincaid,* 28 Or. 537, 41 P. 156 (1895).

The role of special statutes was treated by the Montana Supreme Court in *Teamsters Local 45 v. Montana Liquor Control Bd.*, 155 Mont. 300, 471 P.2d 541, 543 (1970). There the court said:

"Where one statute deals with a subject in general and comprehensive terms and another deals with a part of the same subject in a more minute and definite way, *to the extent of any necessary repugnancy between them* the special will prevail over the general." (emphasis in the original)

In addition, facially conflicting special statutes may simply establish *exceptions* to a general rule. Thus the Oregon Supreme Court has stated that where a "later special or local statute is not irreconcilable with the general statute to the degree that both statutes cannot have coterminous operation, the general statute will not be repealed, but the special or local statute will exist as an exception to its terms." *Andersen v. Heltzel*, 197 Or. 23, 251 P.2d 482, 483–84 (1952).[14]

Certainly in reenacting AS 22.10.020 the legislature has not unequivocally expressed any intent to deny tenured teachers de novo review. Nor was the reenactment part of a comprehensive revision. Since the two statutes are not irreconcilably con-

flicting, but can be intelligently read as conterminous expressions of a general rule and an exception to it, nothing in the edicts of statutory construction requires us to find that AS 14.20.205 has been rendered inoperative by the reenactment of AS 22.10.020.

Additionally, there are strong policy reasons for holding that tenured teachers have a mandatory right to a trial de novo.[15]

The primary reason for granting a trial de novo is that the legislature apparently intended to create such a right in enacting AS 14.20.205. In *Alaska Foods, Inc. v. American Manufacturer's Mutual Insurance Co.*, 482 P.2d 842, 846 (Alaska 1971), we stated, in dictum, why a trial de novo is normally denied in cases involving administrative agencies. The denial results from the

". . . recognition of the respective functions of administrative agencies and the superior court, and [from] the deference the courts feel constrained to show to findings made by such an agency charged by law with the making of factual determinations in a particular area within the scope of executive power." (footnote omitted)

While courts normally feel constrained to defer to the fact-finding role which the

14. Sutherland himself states that subsequent enactment of a general statute will only rarely operate to impliedly repeal a special statute. Thus he writes:

"The enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by the general law, or to a particular locality within the jurisdictional scope of the general statute. An implied repeal of prior statutes will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. Therefore, where the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a

qualification or exception to the general law.

However, since there is no rule of law to prevent the repeal of a special by a later general statute, prior special or local statutes may be repealed by implication from the enactment of a later general statute where the legislative intent to effectuate a repeal is unequivocally expressed. A repeal will also result by implication when a comprehensive revision of a particular subject is promulgated, or upon the predication of a statewide system of administration to replace previous regulation by localities." Sutherland, *supra*, § 23.15, at 245–46. (footnotes omitted)

15. A thorough recapitulation of many of the factors affecting de novo reviews of administrative hearings can be found in Forkosch, *Judicial De Novo Review of Administrative Quasi-Judicial Fact Determination*, 25 Hast. L.J. 963 (1974).

legislature has given to a particular agency, no such constraint logically should exist where the legislature itself has granted the courts a fact-finding role in their review of administrative action. AS 14.20.205 seemingly does just that, for it expressly grants a tenured teacher a "trial de novo" following an unfavorable school board decision. Under these circumstances, our statement in *Aleutian Homes v. Fischer,* 418 P.2d 769, 773 (Alaska 1966), should be borne in mind:

> "As a general statement of law, we are in agreement with [the] contention that where the legislature has established a specific procedure for review of administrative decisions, or orders, such procedure is controlling." (footnote omitted)

In the state of Washington a similar remedy was created by the legislature to insure that tenured teachers would receive an appeal de novo.[16] The Washington Supreme Court expressed no reservations whatever, in upholding the procedures established by the legislature. In *Hattrick v. North Kitsap School Dist.,* 81 Wash.2d 668, 504 P.2d 302, 303 (1972), the court construed the statute to require no less than a determination by the trial court which was "independent of any conclusion of the school board, and . . . based solely upon the evidence and testimony which the trial court receives." *See also Denton v. South Kitsap School Dist.,* 10 Wash.App. 69, 516 P.2d 1080 (1973).

A second reason for upholding Mr. Lum's claim for a trial de novo is that school boards, unlike many administrative agencies, have no unique fact-finding expertise.

In *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L. Ed. 456 (1951), the United States Supreme Court stated why courts are normally allowed only a very narrow scope of review in cases involving appeals from administrative agencies. The restraint exists because the agencies are "presumably equipped or informed by experience to deal with a specialized field of knowledge . . . ." Thus agency "findings within that field carry the authority of an expertness which courts do not possess and therefore must respect."

Professor Louis L. Jaffee, one of the foremost authorities on administrative law, acknowledges that, generally speaking, agency expertise is a legitimate rationale for restricting the scope of judicial review.[17] But Jaffee goes on to state, "it is notorious that [this rationale] can easily become an absurd and mesmerizing shibboleth." Jaffee concludes by noting, "The usual court . . . demands, and properly so, that the agency convince the court that its 'putative' expertness is in fact relevant to the finding in question; and even then it takes this expertness as but one factor in the agency decision which must run the gauntlet of its common sense."[18]

It is well known that the composition of many school boards is not such as to endow them with fact-finding expertise in matters of teacher nonretention.

The state legislature has provided that to qualify as a school board member, one merely needs to be eligible to vote in the municipal elections. AS 14.12.080. Under these circumstances we are not convinced that the school board possesses such expertise that we should defer to the findings in question. From this standpoint there is no policy reason for restricting the superior court's scope of review.

The final policy factor militating in favor of a full application of AS 14.20.205 is that Mr. Lum is faced with the loss of a very important right: his source of income. In this connection we do not feel that it is necessary to indulge in such classificatory labels as "vested right" or "property right," for it is enough that the right

---

16. Rev.Code of Wash. 28A.58.480

17. L. Jaffee, Judicial Control of Administrative Action, 613–16 (Student Ed. 1965).

18. *Id.* at 614–15.

be recognized as important for it to act as a guide to decision in the interpretation of the statute.[19]

From this review of the arguments concerning the construction of the statute and the public policy arguments which bear upon the outcome, we hold that Mr. Lum is entitled to a judicial review de novo on the question of his nonretention. It follows that his case should not be remanded to the school board.

### Helen Lum's Claim for Damages

■ Helen Lum has cross-appealed from the order of the superior court which directed her reinstatement but made no mention of damages or back pay. The order instructs the school board to "take appropriate action not inconsistent with this decision." However, the findings of fact and conclusions of law regarding Helen Lum make no reference to back pay or damages.[20]

Helen Lum's argument can be cast into the form of a syllogism. She first states a well recognized premise which holds that if a person has been denied procedural due process during the course of job termination, then reinstatement with back pay is automatic. See *University of Alaska v. Chauvin*, 521 P.2d 1234, 1239 n. 18 (Alaska 1974). She then cites cases which hold that a hearing before a biased panel denies procedural due process. See *Simard v. Board of Education*, 473 F.2d 988, 993 (2nd Cir. 1973). Finally, she refers us to an affidavit which allegedly establishes that the board was biased against Mrs. Lum. Hence, the argument concludes, Hel-

en Lum was denied procedural due process and is entitled to reinstatement with back pay.

The difficulty with that argument is the assertion of bias in fact on the part of the school board. This assertion was challenged by the school board both below and on appeal. The evidence is clearly conflicting, and the superior court made no findings on the point. Under these circumstances Mrs. Lum's argument for ordering damages is not persuasive.

Courts traditionally have granted reinstatement with back pay under only three conditions. The first is when the administrative agency has denied the employee certain procedural due process rights. See, e. g., *University of Alaska v. Chauvin*, 521 P.2d 1234, 1239 n. 18 (Alaska 1974); *Hatton v. Board of Education*, 422 F.2d 457 (6th Cir. 1970); *Moses v. Washington Parish School Board*, 304 F.Supp. 1112 (D.C.La.1969); *School Dist. v. Karabetsos*, 17 Mich.App. 10, 168 N.W.2d 654 (1969); but see, *Shorba v. Amioka*, 54 Haw. 43, 501 P.2d 807, 813 (1972). The second circumstance is when the employee was fired for exercising certain substantive constitutional rights. *Ramsey v. Hopkins*, 447 F.2d 128 (5th Cir. 1971), modifying *Ramsey v. Hopkins*, 320 F.Supp. 477 (D.C.Ala.1970); *Callaway v. Kirkland*, 334 F.Supp. 1034 (D.C.Ga.1971); *Black v. School Comm. of Malden*, 310 N.E.2d 330 (Mass.1974). Finally, some statutes expressly provide for such treatment by the reviewing court. See, e. g., *Mass v. Bd. of Education*, 61 Cal.2d 612, 39 Cal.

---

19. Where a vested right or a basic constitutional right is at stake, courts normally expand the scope of judicial review of administrative action affecting teacher tenure. *See, e. g., Adcock v. Board of Education*, 10 Cal. 3d 60, 109 Cal.Rptr. 676, 513 P.2d 900 (1973); *Bixby v. Pierno*, 4 Cal.3d 130, 93 Cal.Rptr. 234, 481 P.2d 242 (1971). And as we have noted in *Nichols v. Eckert*, 504 P.2d 1359, 1364 n. 9 (Alaska 1973), the job of even a non-tenured teacher is sufficiently important to warrant certain constitutional protections.

20. It is unclear whether the superior court intended to have the school board determine back pay, or intended to deny to Helen Lum any claim to back pay. At one point the judge stated that no back pay would be appropriate if the school system acted in good faith. At another point he seems to say that Mrs. Lum would have to pursue an independent action for damages. In any event, the findings and final order make no reference to back pay.

Rptr. 739, 394 P.2d 579, 582 (1964); Rev. Code of Wash. 28A.58.480 (1970).

Since none of these conditions is present in Mrs. Lum's case, we hold that she has not demonstrated a right to the automatic imposition of damages in the form of back pay.[21]

This still leaves undetermined the question of whether Mrs. Lum is entitled to adduce proof of any damages she claims to have suffered. That question is answered for the most part by our disposition of the case in other respects.

At oral argument, counsel for Mrs. Lum stated that she would accept a trial de novo of her case together with that of Mr. Lum. In view of our disposition of this case as to Mr. Lum, we deem it appropriate that a trial de novo be had as to the nonretention of Mrs. Lum. At that trial her damage claims may also be considered by the superior court. Such a proceeding will also afford the school board a full opportunity to present its case, both as to nonretention of each of the Lums and as to damages.

In view of our holdings it is unnecessary to consider the question of whether the record of the proceeding before the school board contains substantial evidence to support the board's findings.

The case is remanded to the superior court for further proceedings consistent with this opinion.

Remanded.

ERWIN, J., concurring.

ERWIN, Justice (concurring).

I concur with the opinion, but because of possible implications which arise from that portion of the opinion concerning the power of the legislature to enact procedures governing the appeal of administrative decisions to the superior court and the Supreme Court, I find additional clarification is required.

The quotation from *Aleutian Homes v. Fischer* [1] that "where the legislature has established a specific procedure for review of administrative decisions . . . such procedure is controlling" must be interpreted in light of the fact that at the time of the *Fischer* decision there were no rules of court concerning the appeal of administrative decisions. Clearly, legislative enactment of procedural statutes would be permitted as a matter of comity [2] where the Supreme Court of Alaska had not exercised its constitutional rule-making power in the area under section 15, article IV of the Alaska Constitution.[3] However, in 1973 this Court adopted Appellate Rule 45(i) which specifically provides:

These rules shall supersede all other procedural methods specified in Alaska statutes for appeals from administrative agencies to the courts of Alaska.

In *Winegardner v. Greater Anchorage Area Borough*,[4] the Supreme Court noted that the adoption of Appellate Rule 45 was an expression of supremacy over procedural statutes and constituted the exercise of judicial power distributed to the Supreme Court under sections 1 and 15, article IV of the Alaska Constitution.[5] *Winegardner* then determined that the grant of a jury trial on review of an assessment by the Greater Anchorage Area Borough as pro-

---

21. *Cf. Redman v. Department of Education,* 519 P.2d 760 (Alaska 1974).

1. 418 P.2d 769, 773 (Alaska 1966) (footnote omitted).

2. *See State v. Scott,* 387 S.W.2d 539, 543 (Mo.1965); *Perin v. Peuler,* 373 Mich. 531, 130 N.W.2d 4, 9–10 (1964) (Missouri and Michigan both have constitutional provisions similar to our section 15, article IV). *See* also *Leege v. Martin,* 379 P.2d 447, 449 (Alaska 1963).

3. The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. . . .

4. 534 P.2d 541 (Alaska 1975).

5. *Id.* at 545.

vided by statute [6] was a grant of a substantive right [7] and thus did not constitute a violation of the doctrine of separation of powers as reflected in section 15 of article IV.

Therefore, while the legislature may grant substantive rights to litigants, it may not enact procedural statutes in the area of administrative appeals contrary to our Rules without complying with the constitutional requirements of section 15, article IV of the Alaska Constitution.[8]

---

6. AS 29.52.140(f).

7. 534 P.2d at 547.

8. . . . These rules may be changed by the legislature by two-thirds vote of the members elected to each house.